**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **M.M.-1**

**No. 25-615** (Kanawha County CC-20-2023-JA-113)

## MEMORANDUM DECISION

Petitioner Father M.M.-2[1] appeals the Circuit Court of Kanawha County's August 12, 2025, order terminating his parental rights to M.M.-1, arguing that the circuit court erred in adjudicating him as an abusing parent based upon insufficient evidence, failing to review certain evidence, terminating his parental rights, and violating his constitutional right to free speech.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2023, the DHS filed an abuse and neglect petition alleging that the mother exposed M.M.-1 and her two older children, A.S. and P.S., to sexually inappropriate behavior constituting child sexual abuse.[3] Based on further disclosures from A.S. and P.S., the DHS amended its petition to include allegations of sexual abuse against the petitioner. Specifically, the DHS alleged that when A.S. and P.S. spent the night at the petitioner's home (where M.M.-1 resided), the petitioner masturbated in the presence of A.S. and P.S. and filmed the children in the bathroom and/or shower.

In September 2023, the circuit court held an adjudicatory hearing. The forensic interviewer who conducted A.S.'s and P.S.'s Child Advocacy Center ("CAC") interviews testified that the children disclosed that the petitioner recorded A.S. after she showered by sliding his phone under the bathroom door; grabbed A.S.'s buttocks; made inappropriate sexual remarks to A.S. and P.S.; played sexual games with them; and that both A.S. and P.S. witnessed the petitioner masturbate with M.M.-1 asleep in the same bed on two separate occasions. A DHS worker also testified that these children made similar disclosures of sexual abuse to her as well, leading to the filing of the amended petition. Ultimately, the court adjudicated all three children as abused children and the

---

[1] The petitioner is self-represented. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Sandra K. Bullman appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the child and the petitioner share initials, we use numbers to differentiate them.

[3] A.S. and P.S. are not the petitioner's biological children and are not at issue on appeal.

petitioner as an abusing parent, specifically finding that the petitioner "has been utilizing sexual grooming techniques towards his [nonbiological] children," A.S. and P.S.

Thereafter, in July 2025, the circuit court held the dispositional hearing.[4] At this hearing, the court first heard argument on the petitioner's motion that the court review additional evidence, including the recordings of prior multidisciplinary team ("MDT") meetings that he privately made which he believed showed credibility issues with the DHS and the guardian, among other things. The petitioner further confirmed that he sought review of this additional evidence in relation to his adjudication. The court denied the petitioner's motion, finding the evidence irrelevant as it attempted to attack his adjudication, a matter already properly litigated before the court where the petitioner, represented by counsel at the time, "had the opportunity to present any evidence that he wished." The court then considered the petitioner's written motion for a post-adjudicatory improvement period. A Child Protective Services ("CPS") worker testified, recommending termination of the petitioner's parental rights based on his repeated failure to acknowledge any wrongdoing. The CPS worker confirmed that the petitioner participated in services, such as adult life skills and parenting classes, a sex offender evaluation, and other psychological evaluations, but still denied being an abusing parent and failed to follow through with any resulting recommendations. The petitioner then testified, again challenging his adjudication as he believed A.S. and P.S. lied about being sexually abused. Accordingly, the court found that "from the beginning of this action, . . . [the petitioner] continues to refuse to acknowledge or accept responsibility for how harmful his actions were to his child." Based on this failure, the court found that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and/or neglect in the near future as he failed to meaningfully follow through with rehabilitative services. Thus, the court denied the petitioner's motion for an improvement period and, considering the child's need for stability, further found that termination of his parental rights was necessary for M.M.-1's welfare. Therefore, the circuit court terminated the petitioner's parental rights to M.M.-1.[5] Further, due to multiple instances of the petitioner discussing these confidential proceedings in detail on public platforms, the court ordered that he refrain from such conduct. It is from the court's dispositional order that the petitioner now appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, 930 S.E.2d 400 (2026). To begin, the petitioner challenges his adjudication by arguing that the evidence failed to establish that he abused and/or neglected M.M.-1. We disagree. West Virginia Code § 49-4-601(i) requires the DHS to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing evidence." "[T]he clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable

---

[4] The record reflects that the case was prolonged by various issues including, but not limited to, contempt proceedings and the petitioner's motion to disqualify the presiding circuit judge, which was ultimately denied.

[5] The mother's parental rights remain intact, and the permanency plan for M.M.-1 is reunification with the mother upon her successful completion of an improvement period.

doubt as in criminal cases.'" *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Here, the DHS presented evidence of A.S.'s and P.S.'s disclosures, which detailed various instances of sexual abuse by the petitioner in the same home where M.M.-1 resided, qualifying M.M.-1 as an abused child. *See* Syl. Pt. 2, in part, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995) (holding that when "a child has suffered . . . sexual abuse while in the custody of [a] . . . custodian, another child residing in the home when the abuse took place who is not a direct victim of the . . . sexual abuse but is at risk of being abused is an abused child").[6] Accordingly, the court did not err in adjudicating the petitioner as an abusing parent of M.M.-1 as sufficient evidence supported its decision.

Additionally, the petitioner argues that the court should have reviewed the MDT meeting recordings he presented at the dispositional hearing in support of his attempts to relitigate his adjudication. However, "[t]he West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings." Syl. Pt. 1, in part, *State v. Johnson*, 213 W. Va. 612, 584 S.E.2d 468 (2003) (quoting Syl. Pt. 1, in part, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995)). As such, "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." *Johnson*, 213 W. Va. at 613, 584 S.E.2d at 469, Syl. Pt. 2, (quoting Syl. Pt. 10, *State v. Huffman*, 141 W. Va. 55, 87 S.E.2d 541 (1955) (overruled on other grounds)). Here, the court found that the MDT recordings were irrelevant to the issue at hand (the petitioner's disposition), as this evidence was offered to attack his adjudication, a matter which had concluded months before. *See also* W. Va. R. Evid. 402 ("Irrelevant evidence is not admissible."). Accordingly, the record fails to indicate that the court abused its discretion when it denied the petitioner's request, and we therefore decline to disturb the court's decision.

The petitioner also argues that the court erred in terminating his parental rights to M.M.-1 because this was not the least restrictive alternative. We again disagree. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights without the use of a less restrictive alternative "[u]pon a finding that there is no reasonable likelihood that the

---

[6] Although the petitioner argues that the court erred by relying on testimony from the children's CAC interviewer when adjudicating him because the CAC interviews were not admitted into evidence, we note that the petitioner failed to object to such testimony below and, thus, waived such argument on appeal. *See In re E.R.*, No. 19-0443, 2020 WL 598259 at *5 (W. Va. Feb. 7, 2020) (memorandum decision) ("Simply put, because petitioner failed to contemporaneously object to the testimony of the [DHS's] witnesses at the time the testimony was offered, petitioner waived the issue on appeal and is entitled to no relief in this regard."). To the extent that the petitioner argues the court erred in failing to admit recordings of the children's CAC interviews into evidence, thus violating his due process rights, the record reflects that the petitioner's counsel objected to the admission of these interviews, which the court sustained. We have held that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syl. Pt. 2, *Hopkins v. DC Chapman Ventures, Inc.*, 228 W. Va. 213, 719 S.E.2d 381 (2011) (citing Syl. Pt. 1, *Maples v. W. Va. Dep't of Commerce*, 197 W. Va. 318, 475 S.E.2d 410 (1996)). As such, the petitioner cannot be entitled to relief.

conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). However, we have repeatedly emphasized that "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). At disposition, the petitioner was adamant that he did not sexually abuse the other children in the home and demonstrated no insight into how his actions harmed M.M.-1. Accordingly, the court properly found that there was no reasonable likelihood that the petitioner could correct the conditions of abuse in the near future. *See* W. Va. Code § 49-4-604(d)(3) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts."). Further, the court considered the child's need for stability and found that termination was necessary for M.M.-1's welfare. Therefore, the circuit court did not err in terminating the petitioner's parental rights to M.M.-1.[7]

Finally, the petitioner asserts that his constitutional right to free speech was violated when the court prohibited him from discussing the details of these proceedings on public platforms without putting such order in writing. This argument is directly contradicted by (1) West Virginia Code § 49-5-101, which requires that abuse and neglect proceedings remain confidential, and (2) the fact that the circuit court incorporated its prohibition into the *written* dispositional order. Thus, we conclude that the petitioner is not entitled to relief.[8]

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 12, 2025, order is hereby affirmed.

---

[7] To the extent that the petitioner argues it was error to decline to order a CAC interview of M.M.-1, the petitioner voluntarily withdrew his motion on the matter. Because the petitioner deprived the circuit court the opportunity to rule on the issue, he has waived it on appeal. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

[8] The petitioner additionally argues that the DHS's emergency removal of M.M.-1 was improper but fails to cite to any authority governing emergency removals. Instead, the petitioner cites to West Virginia Code § 49-4-601 which governs abuse and neglect petitions, venue, notice, and other unrelated procedures. Because the petitioner's brief contains no authority in support of his argument, we decline to address it. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument clearly . . . citing the authorities relied on . . . .").

Affirmed.

**ISSUED**: July 28, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice H. L. Kirkpatrick
Justice James W. Flanigan